CHE L. HASHIM Esq. (SBN 238565)
179 11th Street, 2nd Floor
San Francisco, CA 94103
Telephone: (415) 487-1700
Facsimile: (415) 865-0376

Attorney for Plaintiff
REBEL8, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA



| | |
|---|---|
| REBEL8, Inc., | Case No.: |
| Plaintiff, | |
| vs. | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION |
| M.O.B., Inc. and CHAD SCHOEMAN | |
| Defendants | |

**A.    FACTUAL STATEMENT**

Plaintiff REBEL8, Inc. ("REBEL8") is the owner of a registered copyrighted ink drawing entitled "STARTIN' UP A POSSE" and bears an effective date of registration of February 21, 2006. The copyrighted "STARTIN' UP A POSSE" design appeared first in the "Spring / Summer 2006" REBEL8 catalogue. (See EXHIBITS B and C filed concurrently herewith in "Exhibits Accompanying All Pleadings, Declarations and any other Records on File in This Action." Note that all EXHIBITS mentioned hereafter are filed as such.)

In August of 2007, it came to Plaintiff's attention that their copyrighted design had been copied without authorization by Defendants M.O.B., Inc. ("MOB Inc.") and/or CHAD

SCHOEMAN and was being used by Defendants, in a minimally altered state, for a "VIVA LA MOB" design. Although some changes were made to the "VIVA LA MOB" design, it is a derivative of Plaintiff's copyrighted "STARTIN' UP A POSSE" design.

The "VIVA LA MOB" design appeared on t-shirts and sweatshirts. The t-shirts and sweatshirts bearing the "VIVA LA MOB" design were sold and continue to be sold both on internet retail sites and in physical retail locations in California. (See EXHIBIT D.)

Defendant CHAD SCHOEMAN ("SCHOEMAN") is the owner of the Trademark "MOB INC." (See EXHIBIT E.) REBEL8 attempted to and did contact SCHOEMAN. SCHOEMAN conceded use of the "VIVA LA MOB" design, but demonstrated an indifference to the possibility that the "VIVA LA MOB" design was infringing on Plaintiff's copyrighted drawing.

Defendants MOB Inc. and/or SCHOEMAN clearly copied Plaintiff's "STARTIN' UP A POSSE" drawing in an effort to create confusion, and to take advantage of Plaintiff's good will in the trade and amongst the consuming public. However, Defendants were not content with violations of intellectual property infringement. They sought to exacerbate their already illegal conduct by fraud and deceit. Such acts of Defendants are detailed in the Declaration of JOSH DRAPIEWSKI, which is filed concurrently as EXHIBIT F.

Defendants intentionally misled customers, from both the public and the trade, by falsely representing affiliation with REBEL8. Affiliation was represented by placing the infringing product directly next to products, which bear resemblance to Plaintiffs products and are made by a Company that Plaintiff has an ongoing and well-publicized collaborative relationship. Thus, the promotional and marketing efforts of Defendant's are intended, and in fact do, create confusion amongst the consuming public, by deceptively passing-off Defendant's designs as those having originated from the Plaintiff's Company, or from a collaboration between Plaintiff and his well known collaborative partner.

Further, within the past months SCHOEMAN has received several requests to cease and desist from offering for sale any of the infringing products. SCHOEMAN has not responded to

requests to cease and desist. SCHOEMAN has in fact continued to fill orders for sale of the infringing product, with full notice of the claims against Defendants regarding those sales. Again, violating both Federal and California law, Defendants have undertaken actions intentionally designed to confuse and defraud the consumer public and trade.

Furthermore, in specific instances SCHOEMAN was notified of the infringement, and SCHOEMAN's response to such notifications was to intentionally lie, claiming that he would "look into the matter." (Refer to Declaration of JOSH DRAPIEWSKI, Exhibit F.) Clearly, Plaintiff can demonstrate a strong probability of success, and the granting of the injunctive relief herein sought is both proper and necessary.

### B. LEGAL STANDARDS

Injunctive relief is governed pursuant to Rule 65 of the Federal Rules of Civil Procedure, which authorizes the Court to issue temporary restraining orders and preliminary injunctions. Additionally, such power to issue injunctive relief is historically recognize according to the principles of equity, as well as via Congressional authorization, as embodied in Section 502 of the Copyright Act, 17 U.S.C. § 502(a), to prevent a violation under Section 101 of the same title. Further, registration is not required for an enforcement of the owner's rights under the Copyright Act. 17 U.S.C. § 502(a). The Copyright Act provides:

> (a) Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.
>
> (b) Any such injunction may be served anywhere in the United States on the person enjoined; it shall be operative throughout the United States and shall be enforceable, by proceedings in contempt or otherwise, by any United States court having jurisdiction of that person. The clerk of the court granting the injunction shall, when requested by any other court in which enforcement of the injunction is sought, transmit promptly to the other court a certified copy of all the papers in the case on file in such clerk's office.

To obtain injunctive relief, movant must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious

questions are raised and the balance of hardships tips sharply in the moving party's favor. *Roe v. Anserson*, 134 F.3d 1400, 1402 (9th Cir.1998), *aff'd, Saenz v. Roe.* 526 U.S. 489 (1999); *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 174 (9th Cir.1987); *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir.1985); *Sports Form, Inc. v. United Press International, Inc.*, 686 F.2d 752-753 (9th Cir.1982); *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir.1987); *Rodeo Collection, Ldt. V. West Seventh*, 812 F.2d 1215, 1217 (9th Cir.1987); *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir.1985); *Apple Computer, Inc. v. Formula Int'l. Inc.*, 725 F.2d 521, 523 (9th Cir.1984). "These two formulations represent two points on the sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.* However, the Court must find that there is some threat of immediate irreparable injury, even if that injury is not of great magnitude. *Big Country Foods, Inc. v. Bd. Of Educ. Of Anchorage Alaska Sch. Dist.*, 868 F.2d 1085, 1088 (9th Cir.1989 (citations omitted); *Arcamuzi, supra*, 819 F.2d at 93; *American Passage Media Corp. v. Cross Communications, Inc.*, 750 F.2d 1470, 1473 (9th Cir.1985); *Oakland Tribune, Inc., supra*, 762 F.2d at 1376.

      The element of irreparable harm is demonstrated by the real, immediate, and ongoing infringement by Defendants. There is no immediate remedy, other than the granting of the injunctive relief herein sought, which will stop the Defendants' infringing acts, and continuing and immeasurable harm to Plaintiff's goodwill and reputation.

      To prevail, Plaintiff REBEL8 must demonstrate (1) ownership of an enforceable right in a copyright, and (2) that Defendants copied the protected elements of that work. *Rice v. Fox Broad Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003). Plaintiff may establish copying by showing access to the protected work, and substantial similarity to the protected work. *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996)

      The term "access" is defined as "an opportunity to view or copy Plaintiff's work." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000) (quoting *Sid & Marty Krofft Tele. Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977)). Access is proven where

"(1) a particular chain of events is established between the Plaintiff's work and the Defendant's access to that work (such as through dealings with a publisher or record company), or (2) the Plaintiff's work has been widely disseminated." *Id.*

The substantial similarity determination follows "a two-part test having 'extrinsic' and 'intrinsic' components. . . . The extrinsic [component] . . . objectively considers whether there are substantial similarities in both ideas and expression . . . ." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994). Under the extrinsic component, the court compares analytically, "the subject matter, shapes, colors, materials, and arrangement of the representations" in evaluating objective similarities between works of art. The intrinsic component measures "expression subjectively." Apple Computer, 35 F.3d at 1442.

Under the Ninth Circuit's sliding scale test, a party seeking injunctive relief must "[a]s an 'irreducible minimum' …demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Arcamuzi, supra*, 819 F.2d at 937. Plaintiff registered the infringed drawing with the United States Copyright Office, the Effective Date of Registration is February 21, 2006. (See Exhibit B.) Defendant MOB Inc. clearly had access to Plaintiff's copyrighted material. Not only was the drawing registered, it appeared in a catalogue sent out across the world through the normal channels of retail marketing. Defendant is in the apparel business, particularly the street-wear genre, and therefore may be presumed to have had access to the Plaintiff's protected works.

To describe the similarity between the designs at issue, it is most helpful to predict and describe the process by which the infringing design was developed. Clearly, Defendant gained access to a reproduction of Plaintiff's design, because substantial elements of Defendant's design are an exact copy substantial elements of Plaintiff's design. Defendant merely manipulated or left out elements of the original drawing, replacing them with their own, and leaving the remainder of the original drawing untouched. Defendant then further copied Plaintiff by placing their derivative drawing in the exact same location on a t-shirt, as had done with its original drawing. Plaintiff's shirt was the catalogue from whence came the original publication of the infringed drawing. Specifically, Defendant left the following elements untouched:

  (1) The outline of the waist, pulled up tank-top shirt, arms, hands, and guns.

  (2) The details of the praying hand tattoo on the lower right-side waist, the half-flower tattoo on the right elbow, the praying figure tattoo on the right arm, "amor" tattoo on left hand the skull tattoo on the left forearm, the guns, part of the "833" tattoo on the left bicep, the flower tattoo on the left elbow, the tank top lines, and the clavicle lines.

Defendant added the following elements

  (1) New head with bandana covering face and hat bearing MOB on flipped-up brim.

  (2) MOB INC tattoo replacing REBEL8 tattoo on stomach.

  (3) "Por Vida" tattoos on right and left forearms replacing "Good times Bad times" tattoos.

  (4) Blank space replacing "415" tattoo on left forearm; blank space replacing cross tattoo on chest; blank space (end of t-shirt / sweatshirt) replacing pants and belt.

  The similarity is such that Defendants' drawing can only be described as a blatant heist of an original drawing, coupled with bad faith tinkering in which Plaintiff's trademark was replaced by Defendant's. The close physical proximity and stylistic similarity of the trademarks has contributed to confusion in the marketplace. The use of infringing drawings supplanting Plaintiff's trademark with Defendant's trademark has caused, and will continue to cause, unless enjoined, confusion and irreparable damage to Plaintiff. Certainly, Defendants SCHOEMAN and MOB Inc. have deliberately sought to capitalize on the distinctive drawings used by Plaintiff to seek unfair advantage in the marketplace. How else could one reasonably explain the placement of infringing products next to the products of a known collaborative partner of Plaintiff, and the replacing of Plaintiff's trademark with that of Defendant's?

  While Defendants may suffer inconvenience if ordered to cease their infringement of Plaintiff's copyright, their inconvenience will pale in contrast to the irreparable harm that Plaintiff will suffer by the ongoing illegal conduct of Defendants. Even if enjoined, Defendants

can still operate, using non-infringing designs. Public interest favors healthy competition. Such a desired goal is defeated by the continuing breaches by Defendants.

Finally injunctive relief is both authorized and appropriate pursuant to California unfair competition law. California Business & Professions Code §§ 17200 provides a cause of action that is independent of that provided by federal copyright law and may be enjoined.

B. CONCLUSION

Plaintiff has, and continues to suffer irreparable harm caused by the Defendants, and each of them. Plaintiff has demonstrated a likelihood of prevailing on the merits and the ongoing injury to Plaintiff is both irreparable and immediate. Accordingly, Plaintiff respectfully requests that this Court issue a TRO and Preliminary Injunction to enjoin Defendants, and each of them, from further infringing on Plaintiff's mark in any manner.

Dated: February 22, 2008

*[signature]*
CHE L. HASHIM
Attorney for Plaintiff
REBEL8 INC.